UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                                    Plaintiff

v.                                        Criminal Action No. 3:16-cr-00149-01-RGJ

MOHAMMED AL ASAI                                                          Defendant

* * * * *

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on ten Motions *in Limine* filed by the parties on October 23, 2018. [DE 51, 52, 53, 54, 55, 56, 57, 58, 59, 60]. Responses to the Motions *in Limine* were filed on October 30, 2018. [DE 63, 64, 65, 66, 67, 68, 69]. Replies were not permitted. [DE 44, Order Following Arraign. at 148, ¶ 6]. Further, Defendant Mohammed Al Asai ("Asai") filed a Motion to Produce the Complete File of Each Confidential Information that Entered Al Yasmine Foot Market [DE 70] on October 31, 2018, to which the United States filed a Response [DE 71] on November 5, 2018. These matters are ripe for adjudication.

## I.    Background

Asai is charged by the United States with one count of Food Stamp Fraud in violation of 7 U.S.C. § 2024(b), and two counts of Wire Fraud in violation of 18 U.S.C. § 1343. [DN 39, Superseding Indictment at 115–19]. These charges stem from Asai's ownership and operation of Al Yasmine Food Mart in Louisville, Kentucky. [*Id.* at 116]. Al Yasmine Food Mart participated in the Supplemental Nutrition Assistance Program ("SNAP"). [*Id.*]  The United States alleges that "[f]rom in or around January 2013, through in or around August 2016, in furtherance of the scheme and artifice to defraud, [Asai] provided cash and other ineligible non-food items of value in exchange for [SNAP] benefits. Specifically, individuals receiving [SNAP] benefits would go to Al

Yasmine Food Market, provide [Asai] with their Electronic Benefits Transfer cards, and request cash." [*Id.* at 117, ¶ 4]. Then, Asai would allegedly "take the Electronic Benefits Transfer cards to various stores, make purchase for Al Yasmine Food Mart, and charge them to the Electronic Benefits Transfer cards…[and] then give the cardholder cash in an amount less than he had charged to the card." [*Id.*] On other occasions, Asai would allegedly "charge an Electronic Benefits Transfer card at Al Yasmine Food Mart, then provide the cardholder with cash [or other ineligible non-food items of value] in an amount that was less than [Asai] had charged to the card." [*Id.*] The United States further alleges that Asai's actions caused wire communications in interstate commerce, thus constituting wire fraud. [*Id.* at 117-18, ¶ 5]. Asai "does not dispute that he owns [A]l Yasmine Food Mart" and that "he participated in the SNAP program during the period stated in the Indictment, but does dispute all other facts alleged by the United States." [DN 49, Def. Pretrial Memo. at 192]. In advance of trial, scheduled to begin November 7, 2018, the parties have filed ten Motions *in Limine*—four by the United States and six by Asai.

## II.    Legal Standard

Federal district courts have the power to exclude irrelevant, inadmissible, or prejudicial evidence *in limine* pursuant to their inherent authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c)); *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013). However, the "better practice" is to defer evidentiary rulings until trial unless the evidence is clearly inadmissible on all potential grounds. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997); *Bouchard v. Am. Home Prods. Corp.*, 213 F.Supp.2d 802, 810 (N.D.Ohio 2002) (citing *Luce,* 469 U.S. at 41 n. 4). This posture is favored so that "questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Gresh v. Waste Servs. of*

*Am., Inc.*, 738 F.Supp.2d 702, 706 (E.D. Ky. 2010). When this Court issues a ruling *in limine*, it is "no more than a preliminary, or advisory, opinion." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *Luce*, 713 F.2d at 1239). Thus, even where a motion *in limine* is denied, the Court may return to its previous ruling at trial "for whatever reason it deems appropriate." *Id.* (citing *Luce*, 713 F.2d at 1239). Likewise, the Court has discretion to alter or amend a prior *in limine* ruling at trial. *Luce,* 469 U.S. at 41–42.

### III.    The United States' Motions *in Limine*

The United States seeks to exclude four categories of evidence.  Specifically, the United States seeks to exclude: (1) "reverse 404(b) evidence" of instances where Asai legitimately sold eligible food items for SNAP benefits; (2) evidence of Asai's allegedly non-pertinent character traits and prior good conduct; (3) arguments or evidence designed to elicit jury nullification; (4) evidence on cross-examination of confidential sources regarding ongoing or past work not related to the present case.

#### 1.    Reverse 404(b) Evidence

The first motion at issue is the United States' Motion *in Limine* to exclude Asai's "reverse 404(b) evidence." [DE 51].  The United States anticipates that Asai will introduce evidence that his store "legitimately sold groceries or legitimately exchanged eligible food items for SNAP benefits on specific occasions." [*Id*. at 202, 204]. The United States argues such evidence is irrelevant "to the issue of whether [Asai] exchanged cash or other non-food items of value for SNAP benefits on other occasions" and is inadmissible under Rule 404(b).  [*Id.* at 202–04].

Under Rule 401, evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence; and ... [is] of consequence in determining the action." Fed. R. Evid. 401.  However, even if evidence is relevant, it may be inadmissible pursuant

to the United States Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court. Fed. R. Evid. 402. For instance, relevant evidence may be excluded under Rule 403 "if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Likewise, relevant evidence may be excluded pursuant to Federal Rule of Evidence 404(b)(1) as "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Prosecutors may rely on a defendant's prior bad acts as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" in the crime charged. However, such evidence introduced for defensive purposes, or "reverse 404(b)" evidence, is also evidence of a prior act or acts but "is offered as exculpatory evidence by the defendant, instead of being used by a prosecutor against a defendant." *United States v. Lucas*, 357 F.3d 599, 605 (6th Cir. 2004).

"Despite the different implications raised by reverse 404(b) evidence," the Sixth Circuit has applied its "standard 404(b) analysis in addressing the admissibility of such evidence." *United States v. Clark*, 377 Fed. App'x 451, 458 (6th Cir. 2010). A three-step process exists for determining whether other crimes, wrongs, or acts are admitted under Rule 404(b): First, the district court must make a preliminary determination regarding whether there is sufficient evidence that the "other acts" took place. *United States v. Lattner,* 385 F.3d 947, 955 (6th Cir. 2004). The district court must then determine whether those "other acts" are admissible for a proper purpose under Rule 404(b). *Id.* Finally, the district court must determine whether the "other acts" evidence is more prejudicial than probative. *Id.*

Here, the United States does not dispute that valid SNAP transactions took place. The issue is whether the evidence of valid SNAP transactions is admissible for a proper purpose under Rule 404(b). Generally, evidence that an individual acted lawfully on other occasions not charged in the indictment is inadmissible because it does not negate the charge that he acted with criminal intent on another occasion. *See United States v. Dobbs,* 506 F.2d 445, 447 (5th Cir. 1975) ("evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant"); *United States v. Ellisor,* 522 F.3d 1255, 1270 (11th Cir. 2008) (in fraud trial involving bogus entertainment event, evidence that defendant had produced a prior legitimate event was not relevant to "negate criminal intent"); *United States v. Daulton*, 266 Fed. App'x 381, 386 (6th Cir. 2008) ("Rule 404(b) prohibits the use of extrinsic evidence of other crimes, wrongs, or acts in order to show that a person acted in conformity therewith.").

However, evidence that an individual acted lawfully on other occasions not charged in the indictment may be probative where a defendant is alleged to have "always" or "continuously" committed the acts alleged. *United States v. Damti*, 109 Fed. App'x 454, 455–56 (2d Cir.2004); *see also Daulton,* 266 Fed. App'x at 386 ("Evidence of noncriminal activities 'would only be relevant if the indictment charged the defendants with ceaseless criminal conduct.'") (quoting *United States v. Scarpa*, 913 F.2d 993, 1011 (2d Cir. 1990)); *Dobbs*, 506 F.2d at 447 (finding reverse 404(b) evidence not relevant where the defendant was not charged with a scheme).

In *Daulton*, for instance, the defendant was charged with separate instances of criminal conduct—preparing fraudulent tax returns—but he was not charged with a continuing "scheme." The Sixth Circuit excluded reverse 404(b) evidence, specifically instances where the defendant had prepared non-fraudulent tax returns, holding the evidence would be "irrelevant and immaterial" to the discrete instances of criminal conduct charged in the indictment as there were

no allegations of a continuing scheme. 266 Fed. App'x at 386 (citing *Dobbs*, 506 F.2d at 447). Similarly, in *United States v. Estephane*, Judge Thomas B. Russell applied the rule and reasoning of *Daulton* in excluding from evidence instances where Defendant Estephane legitimately sold eligible items for SNAP benefits because they were immaterial and irrelevant to the question of whether, on the specific dates in question, he committed food stamp and wire fraud. No. 3:16-CR-148-TBR, 2017 WL 4927676, at *4 (W.D. Ky. Oct. 31, 2017).

Here, Asai argues that the evidence of legitimate SNAP sales is relevant because "[e]vidence tending to show a pattern or practice of lawful dealing certainly bears on the question of whether fraud has occurred." [DE 63]. Asai is charged in the Superseding Indictment with separate instances of food stamp and wire fraud. [DN 39 at 115–19]. The Superseding Indictment states that Asai operated a scheme to defraud SNAP. [*Id*. at 116, ¶2]. The United States does not contend that Asai always engaged in unlawful SNAP transactions and admits that "Al Yasmine Food Mart was and is a real business that sold groceries and charges that in the course of business the Defendant sometimes exchanged cash and other non-food items of value for SNAP benefits. However, there is no allegation that the store was a mere front for non-stop fraud." [DE 51 at 203]. At the final pretrial conference held on November 6, 2018, the United States confirmed that it is proving a scheme and comparative data will be used in part to prove a scheme. Therefore, evidence of legitimate SNAP sales may be relevant. However, as argued by the parties, that is not an open door for the needless presentation of cumulative evidence of legitimate sales. Fed. R. Evid. 403 ("court may exclude relevant evidence if its probative value is substantially outweighed by a danger of…needlessly presenting cumulative evidence."); *United States v. Williams,* 81 F.3d 1434, 1443 (7th Cir.1996)(evidence is "cumulative" when it adds very little to the probative force of the other evidence in the case, so that if it were admitted its contribution to the determination of truth

would be outweighed by its contribution to the length of the trial). Thus, at this time the United States' Motion *in Limine* No. 1 [DE 51] is DENIED and the Court will permit such evidence to the extent directly relevant to the "scheme" and/or the unsuccessful undercover buys. However, to the extent Asai plans on submitting cumulative evidence of legitimate transactions, the Court will limit needlessly cumulative evidence at trial.

### 2. Evidence of Defendant's Character Traits and Prior Good Conduct

The second motion at issue is the United States' Motion *in Limine* to exclude Asai's "non-pertinent traits of character and prior instances of good conduct, except reputation or opinion evidence offered by character witnesses strictly in accord with [FRE 405(a)]…." [DE 52]. Specifically, the United States anticipates Asai may seek to introduce evidence that he is a law-abiding citizen or good person, that he worked as an Arabic translator for the American military, and that he received commendations for this service. [*Id.* at 206]. In response, Asai asserts that he is entitled to introduce evidence of his prior law-abiding nature and his good character, in particular, "the fact that he previously risked his life serving the United States in a war zone." [DE 64 at 261].

Evidence of character is addressed in the Federal Rules of Evidence 404 and 405. Rule 404 addresses when character evidence and evidence of other crimes or acts (including lawful conduct as discussed above) is admissible. Once it is determined whether character evidence is admissible, Rule 405 addresses the the permissible methods of proof. Even if character evidence is admissible under Rule 404, it may be excluded under Rule 403 if its probative value is substantially outweighed by danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Pursuant to Rule 404(a) "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). However, Rule 404(a)(2)(A) makes an exception in a criminal case: "a defendant may offer evidence of the defendant's **pertinent trait**, and if the evidence is admitted, the prosecutor may offer evidence to rebut it." Fed. R. Evid. 404(a)(2)(A) (emphasis added). "Pertinence" is generally defined as relevance, meaning that the offered trait must have some tendency to prove or disprove an element of the offense charged or of a claimed defense. *See, e.g.*, *United States v. John*, 309 F.3d 298, 303 (5th Cir. 2002).

Subsection (a) of Rule 405 provides that if a character trait is admissible, "it may be proved by testimony about the person's reputation or by testimony in the form of an opinion. On cross-examination of the character witness, the court may allow an inquiry into relevant specific instances of the person's conduct." Fed. R. Evid. 405(a). Subsection (b) of Rule 405 further provides that a person's character may be proved by specific instances of the person's conduct "[w]hen a person's character or character trait is an essential element of a charge, claim, or defense." Fed. R. Evid. 405(b).

Here, the issue is whether evidence of Asai's law abiding nature and service in the United States military and related commendations qualify as "pertinent traits" under Rule 404(a)(2)(A). As to evidence of character of law-abidingness, Courts have held that the general character trait of law-abidingness is pertinent to almost all criminal offenses. *See In re Sealed Case*, 352 F.3d 409, 412 (D.C. Cir. 2003) (citing *United States v. Daily*, 921 F.2d 994, 1010 (10th Cir. 1990); *United States v. Hewitt*, 634 F.2d 277, 279 (5th Cir. 1981); John W. Strong, MCCORMICK ON EVIDENCE § 191, at 674 (5th ed. 1999)); *see also United States v. Diaz*, 961 F.2d 1417, 1419 (9th Cir. 1992).

Further, evidence of character traits for truthfulness and honesty have been held admissible when the defendant is charged with an offense in which fraud is one of its statutory elements. *Id.* (citing *Edgington v. United States*, 164 U.S. 361, 363–64 (1896)).

Asai has been charged with food stamp fraud and wire fraud and the trait of law-abidingness is pertinent to those charges. Therefore, Asai may present evidence of the trait of law-abidingness. However, such evidence may only be proved in accordance with Rule 405(a) "by testimony about the person's reputation or by testimony in the form of an opinion." Additionally, the crimes of food stamp fraud and wire fraud implicate fraud or dishonesty in their elements. Thus, Asai may offer character evidence with regard to truthfulness in accordance with Rule 405(b) "by relevant specific instances of the person's conduct."

As to Asai's military service and commendations, it is more difficult to see how this evidence qualifies as a "pertinent trait" under Rule 404(a)(2)(A). Court have held that military service and service as police officers demonstrate character traits of bravery and attention to duty, but were not pertinent to narcotics and bribery offenses and mail fraud conspiracy and perjury. *United States v. Washington*, 106 F.3d 983, 999 (D.C. Cir. 1997) (commendations as police officers held not to be pertinent traits to the narcotics and bribery offenses charged); *United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989) (commendation while in military service and as police officer not held to be pertinent traits to mail fraud conspiracy and perjury offenses charged). Here, it does not appear the character traits from Asai's military service are pertinent to the food stamp fraud and wire fraud charges. Accordingly, the Court will GRANT in part and DENY in part the United States' second Motion *in Limine* [DE 52]. However, the Court has the right to reconsider its ruling regarding Asai's military service and commendations at trial should they be pertinent based upon the proof.

### 3. Arguments or Evidence Designed to Elicit Jury Nullification

The United States' moves to exclude any evidence designed to suggest to the jury that they should render a verdict at odds with the law and acquit the Defendant even where the United States has met its burden of proof [DE 54]. Specifically, the United States anticipates Asai may "argue that he was attempting to help people by violating SNAP regulations and that the cardholders were willing participants in the transactions, thus no one was harmed . . . [or] may try to introduce evidence that he lived a modest lifestyle, residing in a trailer in back of his store, and thus did not obtain substantial profits from his fraud." [*Id.* at 215]. Asai filed no response to this Motion.

A defendant may not offer evidence and testimony for the sole purpose of inviting jury nullification. *See United States v. Duval*, 865 F.Supp.2d 803, 809 (E.D. Mich. 2012) (explaining that jury nullification occurs when there is no purpose for evidence "other than to ask the jury to acquit despite proof of the elements of the crimes beyond a reasonable doubt"); *United States v. United Memorial Hosp.*, No. 1:01–CR–238 RAE ALL, 2002 WL 32998218, at *2 (W.D. Mich. Aug. 21, 2002) (barring evidence or argument about the collateral consequences of conviction of a hospital, including exclusion from the Medicare program and potential closure of the hospital, because those "grave" potential consequences were "so unfairly prejudicial, i.e., it is likely to evoke sympathy, invite prejudice, and encourage jury nullification."). Accordingly, any arguments or evidence that Asai was attempting to help people by violating SNAP regulations, that the cardholders were willing participants in the transactions, that no one was harmed, that he lived a modest lifestyle, that he resided in a trailer in back of his store, and that he did not obtain substantial profits from his fraud, if offered for the sole purpose of inviting jury nullification, will be excluded from the trial in this matter. For these reasons, the United States' Motion *in Limine* [DE 54] is GRANTED.

**4. Evidence of Confidential Human Sources' Work on Other Cases and Motion to Produce the Complete File of Each Confidential Informant that Entered Al Yasmine Food Market**

The final Motion *in Limine* filed by the United States seeks to limit Asai's cross-examination of confidential human sources to only the source's work on the present case and prohibit Asai's cross-examination from the nature and substance of any ongoing or past work on investigations, including the names of targets in those investigations. [DE 55]. The United States argues the disclosure of such information could expose the sources, jeopardize the investigations, and reveal sensitive information. [*Id.* at 219]. The United States requests the Court require the Defendant make an offer of proof *in camera*. [*Id.*] Asai filed a response and argues that any such limitation would deny his Sixth Amendment right to confront the United States' witnesses on credibility or potential bias. [DE 65 at 263–64]. Asai argues that he has the right to demonstrate bias by showing that the witness has an interest based upon continuing cooperation with the United States and that the witness is not a "'one off' concerned citizen…" [*Id.*] Similarly, Asai moves the Court to order the United States "to produce the complete informant file for each confidential source which the Government had contact with Muhammed Al Asai or Al Yasmine Food Mart whether or not it intends to use the source as a trial witness." [DE 70]. Asai argues that such informant files are essential to ensure his due process rights under the Sixth Amendment. *Id.* at 2.

A defendant has a right under the Sixth Amendment's Confrontation Clause to cross-examine witnesses of the United States on matters relating to credibility or potential bias. *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974). This encompasses the right to "expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could approximately draft inference relating to the reliability of the witness." *Davis*, 415 U.S. at 318. The right to cross-examination is not without limit and the trial judge may "impose reasonable limits on . . . cross-examination based

on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). When "the defense is not allowed to plac[e] before the jury *facts* from which bias, prejudice or lack of credibility of a prosecution witness might be inferred," *Dorsey v. Parke,* 872 F.2d 163, 167 (6th Cir. 1989) (first alteration in original; citation and internal quotation marks omitted), "there is…a denial or significant diminution of cross-examination that implicates the Confrontation Clause." *Boggs v. Collins*, 226 F.3d 728, 739 (6th Cir. 2000).

It is well established that a Defendant may cross-examine a confidential informant regarding the number of times he or she has cooperated on investigations, and any remuneration or benefits received in exchange. *See Thomas v. Westbrooks*, 849 F.3d 659, 655-66 (6th Cir. 2017); *Robinson v. Mills*, 592 F.2d 730, 735-36 (6th Cir. 2010). While Asai argues that the United States is seeking to limit his cross-examination of the confidential source to only the investigation in this case, the United States' motion does not seek such limitation. Rather, the United States does not object to cross-examination regarding the fact that a confidential human source may be involved in other investigations, and may receive benefits in exchange. Instead, the United States only objects to examination regarding the specific substantive details of those investigations that are sensitive, such as names of targets, which would have no relevance to the present case and could endanger the safety of others. Accordingly, the Court will GRANT the United States' Motion in Limine No. 4 [DE 55] IN PART insofar as Asai shall be required to make an offer of proof *in camera* to the extent he wishes to cross-examine a confidential source regarding the specific substantive details of an investigation that is unrelated to Asai.

Similarly, Asai fails to show that he is entitled to the "complete informant file for each confidential source which the Government had contact with Muhammed Al Asai or Al Yasmine

Food Mart whether or not it intends to use the source as a trial witness." [DE 70]. The Supreme Court has clarified that "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one…" *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Instead, *Brady* only requires the United States to turn over evidence favorable to the accused. 373 U.S. at 87. *Giglio* extended the prosecution's obligations to include the disclosure of information affecting the credibility of a government witness. 405 U.S. at 154–55. As the Court later explained, "[i]mpeachment evidence,… as well as exculpatory evidence, falls within the *Brady* rule" because it is "evidence favorable to an accused,… so that, if disclosed and used effectively, it may make the difference between conviction and acquittal." *United States v. Bagley*, 473 U.S. 667, 676 (1985) (quotation omitted).

The United States is primarily responsible for deciding what evidence it must disclose to the defendant. *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987) ("In the typical case where a defendant makes only a general request for exculpatory material under *Brady*[], it is the State that decides which information must be disclosed."). Whether the United States has suppressed information is a matter for inquiry first by the defense counsel making a request of the prosecutor. If defense counsel remains unsatisfied, the court may require the United States to produce the undisclosed information for *in camera* inspection. *United States v. Prochilo*, 629 F.3d 264, 268 (1st Cir. 2011). To justify an *in camera* review for *Brady* material, a defendant must make at least a "plausible showing" that the government files at issue contain material exculpatory or impeachment information. *United States v. Garcia-Martinez*, 730 F. App'x 665, 674 (10th Cir. 2018), *cert. denied*, (U.S. Nov. 5, 2018) (collecting cases); *see also Prochilo*, 629 F.3d at 268–69 (noting that to merit *in camera* review of disputed *Brady* materials, the defendant must "articulate with some specificity what evidence he hopes to find in the requested materials, why he thinks the

materials contain this evidence, and finally, why this evidence would be both favorable to him and material," and, in this regard, his "showing cannot consist of mere speculation"); *United States v. Navarro*, 737 F.2d 625, 630–31 (7th Cir. 1984) ("Mere speculation that a government file may contain [discoverable] material" is not sufficient to require *in camera* inspection. A standard "satisfied by mere speculation would convert *Brady* into a discovery device and impose an undue burden upon the district court.").

In this case, Asai's Motion to Produce the Complete File of Each Confidential Information that Entered Al Yasmine Food Market [DE 70] seeks indiscriminate access to informant files before trial, whether or not they contain impeachment or exculpatory evidence and whether or not they pertain to individuals whom the United States intends to call as witnesses as trial. Asai fails to articulate what evidence he hopes to find in the materials. Instead, he merely speculates that he may be able to find information with which to cross-examine the United States' informants. [DE 70]. Further, at the pretrial conference held on November 6, 2018, Asai conceded he was satisfied with the discovery received from the United States and answers to his concerns raised. Accordingly, the Court must DENY Asai's Motion to Produce the Complete File of Each Confidential Information that Entered Al Yasmine Food Market [DE 70] insofar as it seeks, without further justification, indiscriminate access to confidential informant files.

## IV. Asai's Motions *in Limine*

Asai seeks to exclude six categories of evidence. Specifically, Asai seeks to exclude: (1) evidence of statewide store averages of SNAP transactions; (2) evidence of computer generated red flags that preceded the investigation into Asai's store; (3) evidence of other store SNAP sales in comparison with Asai's store; (4) evidence that Asai's SNAP authorization was revoked in November 2016; (5) evidence outside the indictment period; (6) "summary chart information."

**1. Statewide Store Averages of SNAP Transactions, Computer Generated Red Flags, Other Store SNAP Sales in Comparison with the Defendant's Store**

Asai's first, second, and third Motions *in Limine* seek to exclude evidence of statewide averages of SNAP transactions [DE 53], "computer generated red flags," also known as "ALERT flags," [DE 56], and local store SNAP comparisons [DE 57]. The United States filed a combined response. [DE 66]. As a preliminary matter, the United States agreed to only submit evidence of Jefferson County averages, rather than statewide averages. [DE 66 at 268 n.1]. Thus, Asai's first Motion *in Limine* [DE 53] is DENIED as moot.

Asai argues it "is not possible to determine whether a SNAP sale is legal by store-to-store comparison. Such evidence is not relevant to the question of whether Mr. Al Asai's SNAP sales were legitimate and are not admissible under FRE 402." [DE 53]. He further asserts the probative value, if any, is substantially outweighed under Rule 403 by the danger of unfair prejudice because the geographic locations and different economic buying power are not comparable. [*Id.*] Finally, Asai argues even if this evidence were relevant, it would require the testimony of an expert. [*Id.*]

The United States argues that the ALERT flags and store averages are relevant to the question of whether SNAP fraud was occurring at Asai's store. [DE 66 at 269]. Specifically, the United States argues that that fraudulent SNAP transactions average a higher per transaction amount that legitimate purchases of food because the retailer is paying the recipient a lower percentage on the dollar (for instance the recipient receives $0.50 on the dollar for a dollar of SNAP benefits). [*Id.* at 269–70]. Higher transaction amounts drive up overall total SNAP sales for a store. [*Id.* at 270]. Increased traffic from SNAP recipients seeking cash that would otherwise not shop there also drives up overall total SNAP sales. [*Id.*] The United States submits that examining the fop five stores within a category helps put the transaction averages into context. [*Id.*] The United States argues that this evidence, when combined, makes fraud more or less probable. [*Id.*]

As discussed above, evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence; and ... [is] of consequence in determining the action." Fed. R. Evid. 401. The phrase "of consequence" is appropriately analyzed through the lens of materiality, as applied to a given case. *See United States v. Dunn*, 805 F.2d 1275, 1281 (6th Cir. 1986) (explaining that "the fact to be proved must also be 'of consequence to the determination of the action'; that is, material."). Even if relevant, it may be excluded under Rule 403 if the probative value is substantially outweighed by the risk of unfair prejudice. Fed. R. Evid. 403. Prejudice is "unfair" in that "the evidence must suggest a decision on an impermissible basis." *United States v. Schrock*, 855 F.2d 327, 333 (6th Cir. 1988). Unfair prejudice "does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." *Id.* at 335.

Asai argues that the statewide averages and evidence of other store's SNAP sales are not relevant because they are not comparable in geography or customer buying power. However, the United States points out that Al Yasmine Food Mart was classified as a "Small Grocery Store" for purposes of its SNAP retailer authorization. [DE 66 at 266]. The comparison's being made are between Asai's store and other stores in Jefferson County in the "Small Grocery Store" category for SNAP retailers.[1] Moreover, the ALERT scan red flags that were generated are specifically applicable to stores in the "Small Grocery Store" category, like Al Yasmine Food Mart. [DE 66 at 268]. Here, the ALERT scans prompted the investigation into Asai's store. [DE 66 at 267]. Evidence demonstrating why the United States became interested in Al Yasmine Food Mart is of consequence in this case. Thus, the averages of SNAP transactions for other authorized SNAP

---

[1] The United States will not be introducing direct comparisons between Asai's store an any other specific store in Jefferson County other than listing the top five Small Grocery Stores in Jefferson County for SNAP sales. [DE 66 at 268-69].

retailers in the Small Grocery Store category in Jefferson County and the ALERT system red flags specifically generated for stores in this category are relevant.

Asai further argues that any probative value of the store comparisons and ALERT data is substantially outweighed by the risk of unfair prejudice. Asai's argument in this regard is primarily that such statistical evidence is not being presented by an expert, and thus, the jury will be confused. The United States submits that the evidence of ALERT scans or SNAP transactions averages involve only basic math concepts of addition, averages, greater than, less than, and percentages. [DE 66 at 271]. Further, the United States will only offer testimony in the form of facts about how the ALERT system and investigative process works. [*Id.* at 272]. It will not be offering testimony that the ALERT system is definitive proof of fraud. [*Id.*].

The Sixth Circuit has noted that "there is no requirement that statistical evidence be supported by expert testimony." *McCabe v. Champion Intern. Corp.*, 916 F.2d 713 (6th Cir. 1990). Simple averages are "matter[s] of arithmetic 'within the capacity of any reasonable lay person.'" *United States v. Madison*, 226 F. App'x 535, 544 (6th Cir. 2007) (quoting *United States v. Hamaker*, 455 F.3d 1316, 1331–32 (11th Cir. 2006)). Additionally, the Tenth Circuit stated, "[a] mathematical calculation well within the ability of anyone with a grade-school education is, in our opinion, more aptly characterized as a lay opinion under Fed. R. Evid. 701." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005).

Specifically, as to ALERT scans and SNAP transaction averages, a Court in this District examined the issue of whether experts are required for the presentation of evidence regarding the ALERT scans and held that experts were not required. *United States v. Estephane*, No. 3:16-CR-148-TBR, 2017 WL 4927676, at *6 (W.D. Ky. Oct. 31, 2017). Other courts in other districts have also found expert testimony not required to explain ALERT data in the context of civil cases

involving retailer disqualification from SNAP. *See Tikabo v. United States*, No. H-16-2197, 2017 U.S. Dist. LEXIS 151959 at *13 (S.D. Tex. Aug. 21, 2017) (explaining that "no ... expert report is required to support the ALERT data or analysis resulting from such data"); *see also Maredia v. United States*, No. 4:13-cv-1124, 2016 WL 7736585, at *5, 2016 U.S. Dist. LEXIS 189772, at *14–15 (S.D. Tex. Aug. 16, 2016) (explaining that "[t]his Court knows of no other court that requires an expert affidavit for the use of the ALERT data or the analysis thereof.").

In addition, the Court is not persuaded that the jury would be confused by the basic averages regarding Small Grocery Store SNAP sales in Jefferson County. As discussed above, the explanation of the the ALERT scans and how they led into the investigation is probative and will provide the jury with context. The probative value of this information is not substantially outweighed by any prejudicial effect to Asai, or any risk of juror confusion. For these reasons, Asai's Motions *in Limine* Nos. 2 and 3 are DENIED.

### 2. Revocation of Al Yasmine's SNAP Authorization

Asai's fourth Motion *in Limine* seeks to exclude evidence that his store's SNAP authorization was revoked in August, 2016. The United States filed a response stating that it agrees not to introduce evidence relating to the fact that Al Yasmine's retailer authorization for SNAP was revoked. [DE 67]. Accordingly, Asai's fourth Motion *in Limine* is DENIED as moot.

### 3. Evidence Outside the Indictment Period

Asai's fifth Motion *in Limine* [DE 59] seeks to exclude any evidence outside the indictment period under Rule 403, arguing that the information would be confusing and misleading, and thus, any probative value substantially outweighed by the danger of unfair prejudice. [DE 59]. Here, the indictment alleges food stamp fraud occurred during a time period of "on or about January

2013 through on or about August 2016." [DE 39]. It further charges that Asai committed wire fraud "[o]n or about January 28, 2016…[o]n or about May 13, 2016…" [DE 39 at ¶ 5].

The United States argues Asai's motion is too general and fails to reference any specific evidence, and thus, should be denied. [DE 68]. The United States further submits it has leeway to introduce evidence outside the indictment period. Specifically, the United States argues that when approximate dates are alleged in an indictment, as here, it is not necessary to prove the exact dates of an offense, if the dates are "reasonably near" what is charged in the indictment, citing the Sixth Circuit Pattern Jury Instruction (2017) No. 2.04,[2] which is in an instruction regarding "on or about" dates in an indictment. The United States finally submits that are a number of facts outside the indictment period that are admissible, such Asai's application to become an authorized SNAP retailer, which is relevant to his knowledge of the law, and a drop in SNAP sales after a search warrant was executed on his store, which is relevant to proving Asai's SNAP sales were inflated.

In an indictment, "[w]here 'on or about' language is used, the government is not required to prove the exact date, if a date reasonably near is established." *United States v. Martin*, 516 F. App'x 433, 444 (6th Cir. 2013) (quoting *United States v. Nersesian*, 824 F.2d 1294, 1323 (2d Cir. 1987), *cert. denied*, 484 U.S. 958 (1987)). This is because a "reasonably near date" does not amount to a material variance against the defendant. *Nersesian*, 824 F.2d at 1323; *see also United States v. Ford*, 872 F.2d 1231, 1236 (6th Cir. 1989). "This is especially true where ... the exact time when an offense was committed is not an essential element of the offense charged." *Id.*

---

[2] Sixth Circuit Pattern Instruction 2.04 provides as follows:

(1) Next, I want to say a word about the date mentioned in the indictment.

(2) The indictment charges that the crime happened "on or about" _____. The government does not have to prove that the crime happened on that exact date. But the government must prove that the crime happened reasonably close to that date.

The Sixth Circuit has held that a date during an eleven-month period preceding the date alleged in the indictment did not satisfy the "reasonably near" requirement. *United States v. Ford*, 872 F.2d 1231, 1236 (6th Cir. 1989) (felon in possession of firearm conviction reversed because "on or about" instruction not "reasonably near" indictment date). A one-month difference between the date alleged in the indictment and the evidence presented at trial was held not to be unfairly prejudicial where a prior trial of a co-defendant put defendant on notice that the alleged conspiracy was a continuing one. *United States v. Arnold*, 890 F.2d 825, 829 (6th Cir. 1989).

In addition, the commentary to the "On or About" Sixth Circuit Pattern Instruction 2.04 cautions the trial court in giving the "on or about" instruction where the indictment or proof at trial points to a specific the date of the offense. *See* Sixth Circuit Pattern Jury Instruction (2017) No. 2.04, cmt. It further cautions that the "on or about" instruction "may be more appropriate in a case involving a crime like conspiracy, where the proof as to when the crime occurred is more nebulous, than in a case involving a crime like murder, where the proof as to when the crime occurred may be more concrete." *Id.*

Here, the Superseding Indictment charges that Asai committed food stamp fraud "[i]n or around and between January 2013 and August 2016…" [DE 39 at ¶ 1]. It further charges that Asai committed wire fraud "On or about the following dates…[o]n or about January 28, 2016…[o]n or about May 13, 2016…" [DE 39 at ¶ 5]. The exact time the food stamp fraud and wire fraud were committed are not elements of the offense of food stamp fraud or wire fraud. Accordingly, the United States may prove the offenses charges occurred reasonably near the dates in the indictment. However, the Court is unable to rule on Asai's motion at this time without knowing the exact evidence Asai is objecting to as not reasonably near the indictment time periods. Accordingly, Asai's Motion in Limine No. 5 is DENIED.

The Court notes that the United States' summary chart exhibit 4 [DE 69-5-5, Resp. to Motion *in Limine* No. 5, Exhibit 4, 338–41] appears to include transactions from January 2012 through September 2012. These dates appear to be error as there is a gap from September 2012 to September 2013. If not, the 2012 portion of the exhibit may be excludable as not reasonably near the indictment dates.

Further, the Court notes that it agrees with the United States that certain evidence outside the indictment period may be admissible. As has been explained by the Sixth Circuit:

> [p]roper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*United States v. Marrero*, 651 F.3d 453, 471 (6th Cir. 2011) (quoting *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)). Further, in the context of food stamp fraud, the probative value of evidence of a defendant's prior food stamp fraud, outside of the charged time period, was held to have outweighed any prejudice to defendant and thus was admissible during his wire fraud and food stamp fraud prosecution. *United States v. Alhalabi*, 443 F.3d 605, 615 (7th Cir. 2006). This was because the prior fraud explained the ins and outs of a long-running scheme to abuse the electronic food stamp card system by trading cash for benefits at the defendant's store. *Id.* Here, evidence of Asai's SNAP authorization may be relevant background evidence. Further, evidence of the store's plummeted SNAP sales after the execution of a warrant may be relevant e to the story of a long-running charged offense and to showing the previous sales during the indictment timeframe were inflated.

### 4. Summary Chart Information

Finally, Asai's filed a Motion *in Limine* to exclude the United States' introduction of summary charts stating that they would mislead and confuse the jury, and any probative value is substantially outweighed by the danger of unfair prejudice. [DE 60]. The United States responded and attached its anticipated summary exhibits, which have been presented to Asai. [DE 69].

Pursuant to Federal Rule of Evidence 1006:

> The proponent may use a summary, chart, or calculation **to prove the content of voluminous writings**, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

Fed. R. Evid. 1006 (emphasis added). Accordingly, in order for the United States' summary exhibits to be admissible they must meet the following requirements: (1) the underlying data must be so voluminous it cannot be conveniently examined in court; (2) the Defendant has been provided the exhibits and underlying documents for examination at a reasonable time and place; (3) the underlying documents are admissible in evidence; (4) the summary exhibits are accurate and non-prejudicial; and (5) the exhibits will be properly introduced by a witness involved in the preparation of the charts. *See United States v. Bray*, 139 F.3d 1104, 1109 (6th Cir. 1998).

Here, the Court has reviewed the summary exhibits attached to the United States' response. Asai's objection to the summary exhibits is not specific but the Court anticipates it is related to his previous motions *in limine* to exclude evidence of the Small Grocery Store SNAP averages in Jefferson County. As discussed above, the Court has denied that motion and will permit the admission of same. Absent more specific information from Asai, the Court finds there is no other

basis for finding the charts inadmissible.[3]   Accordingly, Asai's Motion *in Limine* No. 6 is DENIED.

## V.   Conclusion

For the reasons set forth above, and being otherwise sufficiently advised, **THE COURT HEREBY ORDERS** as follows:

(1)    The United States' Motion *in Limine* No. 1 to exclude Reverse 404(b) evidence [DE 51] is DENIED but the Court reserves the right to limit needlessly presented cumulative evidence.

(2)    The United States' Motion *in Limine* No. 2 to exclude Character Traits and Prior Good Conduct evidence [DE 52] is GRANTED in part and DENIED in part.

(3)    The United States' Motion *in Limine* No. 3 to exclude evidence Designed to Elicit Jury Nullification [DE 54] is GRANTED.

(4)    The United States' Motion *in Limine* No. 3 to limit evidence of confidential human sources' work on other cases [DE 55] is GRANTED.

(5)    Asai's Motion *in Limine* No. 1 to exclude evidence of statewide store averages of SNAP transactions [DE 53] is DENIED AS MOOT.

(6)    Asai's Motion *in Limine* No. 2 to exclude evidence of computer generated red flags [DE 56] is DENIED.

(7)    Asai's Motion *in Limine* No. 3 to exclude evidence of other store SNAP sales in comparison with Asai's store [DE 57] is DENIED.

(8)    Asai's Motion *in Limine* No. 4 to exclude evidence that Asai's SNAP authorization

---

[3] The Court noted above that the 2012 dates in the United States' summary exhibit No. 4 appear to be in error.  Without more information, this does not provide a basis for granting Asai's motion *in limine* to exclude the summary exhibit.

was revoked in November 2016 [DE 58] is DENIED AS MOOT.

(9)     Asai's Motion *in Limine* No. 5 to exclude evidence outside of the indictment period [DE 59] is DENIED.

(10)     Asai's Motion *in Limine* No. 6 to exclude summary chart information [DE 60] is DENIED.

(11)     Asai's Motion to Produce the Complete File of Each Confidential Information that Entered Al Yasime Foot Market [DE 70] is DENIED.