UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**UNITED STATES OF AMERICA**                                   **PLAINTIFF**

v.                             **CRIMINAL ACTION NO.: 3:16-cr-00149-RGJ**

*ELECTRONICALLY FILED*

**DEFENDANT MOHAMMED AL ASAI'S SENTENCING MEMORANDUM**

**MOHAMMED AL ASAI**                                      **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \*

Mohammed Al Asai stands before the Court for sentencing after being convicted after a four (4) day trial in November 2018.

The Defendant submits this Memorandum to assist the Court in meting a sentence that is sufficient but not greater than necessary to meet the goals of the sentencing reform Act.

In consideration the minimally sufficient sentence under §35532(a)(4):

(1) Nature and Circumstances of the offense

Mohammed Al Asai was convicted at trial of a three (3) count superseding indictment alleging Count One: In or around and between January 2013 and August 2016, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, the defendant, Mohammed Al Asai, did knowingly use, transfer, acquire, or possess the value of more than $100 of benefits under the Supplemental Nutrition Assistance Program, in a manner not authorized by Chapter 51, Title 7, United States Code, and the regulations issued thereunder, in that he knowingly and unlawfully exchanged Supplemental Nutrition Assistance Program benefits for cash and other

non-food items of value with individuals in possession of Electronic Benefits Transfer cards issued through the Supplemental Nutrition Assistance Program.  In violation of Title 7, United States Code, Section 2024(b).  Count Two: In or around and between January 2013 and August 2016, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, defendant Mohammed Al Asai devised and intended to devise a scheme to defraud the Supplemental Nutrition Assistance Program, which is administered by the United States Department of Agriculture, by means of materially false and fraudulent pretenses, representations, and promises, knowing that such pretenses, representations, and promises were false when made, and for the purpose of executing said scheme, did knowingly transmit and cause to be transmitted by means of wire, radio, and television communications in interstate commerce, writings, signs, signals, pictures, and sounds.  Count Three: From at least October 2012 until in or around August 2016, Mohammed Al Asai owned and operated Al Yasmine Food Mart, located at 6700 Strawberry Lane in Louisville, Kentucky. In or around October 2012, Mohammed Al Asai submitted an application on behalf of Al Yasmine Food Mart to participate in the Supplemental Nutrition Assistance Program. The application included information about program restrictions, including the restrictions on trading cash for Supplemental Nutrition Assistance Program benefits and on accepting Supplemental Nutrition Assistance Program benefits from people not authorized to use them. Mohammed Al Asai affirmed he would take responsibility for any Supplemental Nutrition Assistance Program violations at Al Yasmine Food Mart, including trading cash for Supplemental Nutrition Assistance Program benefits, accepting Supplemental Nutrition Assistance Program benefits as payment for ineligible items and accepting Supplemental Nutrition Assistance Program benefits from people not authorized to use

them. From in or around January 2013, through in or around August 2016, in furtherance of the scheme and artifice to defraud, Mohammed Al Asai provided cash and other ineligible non-food items of value in exchange for Supplemental Nutrition Assistance Program benefits. Specifically, individuals receiving Supplemental Nutrition Assistance Program benefits would go to Al Yasmine Food Mart, provide Mohammed Al Asai with their Electronic Benefits Transfer cards, and request crush. Mohammed Al Asai would take the Electronic Benefits Transfer cards to various stores, make purchases for Al Yasmine Food Mart, and charge them to the Electronic Benefits Transfer cards. Mohammed Al Asai would then give the cardholder cash in an amount less than he had charged to the card. On other occasions, Mohammed Al Asai or individuals working for Mohammed Al Asai at Al Yasmine Food Mart would charge an Electronic Benefits Transfer card at Al Yasmine Food Mart, then provide the cardholder with cash in an amount that was less than Mohammed Al Asai had charged to the card. In lieu of cash, Mohammed Al Asai might provide the cardholder with other ineligible non-food items of value. For example, Mohammed Al Asai allowed cardholders to purchase ineligible food items from him personally and from Al Yasmine Food Mart with Electronic Benefits Transfer cards. On some occasions, he also charged Electronic Benefits Transfer cards at Al Yasmine Food Mart, then later made a payment on the cardholders' utilities bills. On or about following dates, in the Western District of Kentucky and elsewhere, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, Mohammed Al Asai did knowingly transmit and cause to be transmitted, by means of wire in interstate commerce, writings, signs, signals, pictures, or sounds, as described in the chart below:

| COUNT NO. | DATE | DESCRIPTION OF WIRE |
|---|---|---|
| 2 | On or about January 28, 2016 | MOHAMMED AL ASAI knowingly charged $187.06 to a Supplemental Nutrition Assistance Program benefits card, bearing number xxxxxxxxxxxx0141, which caused a wire communication from Louisville, Kentucky to outside Kentucky |
| 3 | On or about May 13, 2016 | MOHAMMED AL ASAI knowingly charged $85.65 to a Supplemental Nutrition Assistance Program benefits card, bearing number xxxxxxxxxxxx0141, which caused a wire communication from Louisville, Kentucky to outside Kentucky |

In violation of Title 18, United States Code, Section 1343.

Mohammed Al Asai was the only defendant charged in the three (3) count indictment. This was not a conspiracy. The testimony at trial showed that no other person benefitted. The commentary to USSG §3B1.2 indicates "This adjustment is included primarily because of concerns about relative responsibility". No other person was deemed responsible for the three (3) counts.

### **HISTORY AND CHARACTERISICS OF THE DEFENDANT**

Mohammed Al Asai is a naturalized United States citizen. He was born in Iraq but fled to a U.S. border checkpoint at around the age of 18 after his Uncles were taken by the Hussein regime which solidified his fear that he too would be taken.

From there he spent the next seven (7) years in a refugee camp living in a tent in the desert. During that time, he studied and became fluent in English and finally in 1997 was able to emigrate to the United States.

Within 25 days of arrival in Louisville, United States, sponsored by Catholic Charities, he obtained employment.

As stated in ¶59 of the Presentence Report, in 2003, after the United States entered the Iraqi conflict, the defendant began training in Fort Polk, Louisiana as a role player. Then in 2005, he was relocated to Fort Campbell, Kentucky to conduct and participate in additional field training. In 2006, the defendant went to California where he worked with the Marines for several months. Later in 2006, the defendant became a bilingual advisor for the United States Department of Defense and was deployed to Iraq. Some of the defendant's duties during this time are classified, therefore, the defendant was unable to provide certain information to the probation officer. The declassified information reveals the defendant played a key role in the war strategy of the United States in 2007. Initially, he worked on posters and commercials to change the view of the U.S. presence in Iraq. Additionally, and more importantly, the Defendant was a regional expert of Southern Iraq and its tribes. He pitched an idea, which was accepted and implemented by the United States, which is also known as a counterinsurgency strategy. This strategy gained the cooperation of tribe leaders in Southern Iraq by paying them to work as security. The defendant, through his work, saved the United States a lot of money using this strategy and his particular knowledge of the culture. The defendant describes having a big party thrown for him and he was rewarded with a promotion and a bigger office in Bagdad. The defendant was employed as the primary contact for reconciliation after his marked success. However, in later

2008, the defendant's son was diagnosed with stomach cancer and he was granted emergency leave (his son was 7 years old at the time). While his son was receiving cancer treatment, the Department of Defense indicated they would be replacing the defendant. The defendant was awarded numerous medals and honors including the Psychological Operations (PSYOP) Task Force Commanders Award for Public Service. According to this award, the defendant served as Bilingual Bicultural Advisor for PSYOP and Operation Iraqi Freedom and "made great personal sacrifices and put his life at risk in a combat environment in order to affect positive change for the people of Iraq." Additionally, the defendant's "advanced civilian education, deep understanding of the unique, often subtle, differences between Arab and Western cultures, and mastery of both the Arabic and English languages made him an indispensable team member of the PSYOP Development Center. Daily, he assisted the target audience analysis, plans and programs, product development, and test and evaluation detachments, with insightful criticisms and subsequent recommendations that ensured the accuracy and authenticity of the PSYOP message."

  Mohammed Al Asai spent two years taking care of his sick son and taking him to be seen by various specialists before his son died.  During that two (2) year time period, he lived from his savings and relied on no government benefits.

  He is still in a relationship after almost 20 years with Nora Hardin the mother of his deceased son, and two other sons aged 8 and 12.

  He purchased Al Yasmine Food Mart in 2012 and sold it in December, 2018 in preparation for sentencing on this case.  He is currently driving a truck.

While operating Al Yasmine, he often helped individuals who were not able to obtain food by giving them food.

Counsel is aware that Mohammed loaded a truck with bottles of water and supplies and drove it Florida to donate after Hurricane Michael because he wanted to assist people who had lost homes and possessions.

## PRIOR CRIMINAL HISTORY

Mohammed is a criminal history 0 with this conviction being his first and only misdemeanor or felony.

The Court should impose a sentence below the Guidelines because this will be Mohammed Al Asai's first criminal conviction. Research performed by the United States Sentencing Commission has shown that defendants like Mohammed who have no prior criminal convictions have an even lower rate of recidivism than those individuals in criminal history category I who do have a prior criminal history: defendant's like Mohammed are "the most empirically identifiable group of federal offenders who are least likely to offend." United States Sentencing Commission, Recidivism and the "First Offender", May 2004. First offenders recidivate less frequently in a way that's not taken into account by the sentencing guidelines. See "A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score", at 14-15, available at http://www.ussc.gov/publicat/RecidivismSalientFactorCom.pdf; see also U.S. v. Cabrera, 567 F. Supp. 2d 271 (D. Mass. 2008) (significantly reducing a sentence based on the fact that defendants with zero criminal history points are less likely to recidivate than other defendants in criminal history category I).

7

<u>The Need for the Sentence Imposed to Promote Certain Statutory Objectives</u>:

<u>(a)  To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense</u>

This honorable Court has a duty to impose a sentence that will promote respect for the law and provide just punishment. However, Mohammed Al Asai has otherwise been a law-abiding citizen his entire life. Additionally, he has put his life at risk in a war zone and has helped his Country in a way that is impossible to quantify.

A sentence of probation would not unduly depreciate the seriousness of the offense.  The defense urges the Court to consider the fact that this is a case with a law that was violated which is: "malum prohibitum" not "malum pro se".  A law which is "malum prohibitum" is one that is not illegal because it is immoral but is illegal because the Legislature has decreed that it is illegal.  A law which is "malum pro se" is one that is illegal not only because the Legislation decree's that it is but also because it is immoral.  A sentence of probation would be a just punishment for this offense by this Defendant.

This lack of prior criminal history means that becoming a convicted felon carries a more significant impact upon Mohammed then it would upon an individual with a prior history in the criminal justice system.  The mere fact that Mohammed Al Asai is becoming a convicted felon is in itself more than sufficient punishment in this case to satisfy the statutory requirements. Mohammed is losing his right to vote, his right to hold office, his right to sit on a jury, and his right to possess a firearm. He is losing the ability to possibly obtain different professional licenses. Also, there are many other "collateral consequences" of a felony conviction, under both state and federal law. "Criminal conviction brings with it a host of sanctions and disqualifications that can place an unanticipated burden on individuals trying to re-enter society

and lead lives as productive citizens. "Beyond the Sentence - Understanding Collateral Consequences", Sarah B. Berson, National Institute for Justice, http://www.nij.gov/journals/272/pages/collateral-consequences.aspx.

These facts should be considered by the Court when imposing a sentence that is sufficient but not greater than necessary to fulfill the purposes of the Sentencing Reform Act. These facts show the Court that there is definitely punishment in a conviction, beyond just a term of incarceration. Indeed, the United States Supreme Court chided the lower courts for giving no weight to the substantial restriction of freedom involved in a term of supervised release or probation. See United States v. Gall, 128 S. Ct. 586 (2007). The Supreme Court said that "[o]ffenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty." Gall at 596 (citing United States v. Knights, 534 U.S. 112, 119, (2001)); see also Griffin v. Wisconsin, 483 U.S. 868, 874 (1987) ("Inherent in the very nature of probation is that probationers `do not enjoy the absolute liberty to which every citizen is entitled").

### (b) To protect the public from further crimes of the defendant

The best way to predict future behavior of a defendant is to look at past behavior. Mohammed Al Asai has absolutely no criminal history whatsoever at age 47. As supported by both extensive empirical studies and case law, Mr. Asai is an extremely low risk to re-offend, based upon a variety of factors. A below-guideline sentence, such as probation, would be sufficient to deter Mr. Asai from any future criminal conduct, because such a sentence will have a huge impact on Mr. Asai's life.

### (c) To provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner

Mohammed Al Asai has the equivalent of two years of college education. He is bilingual, he is a trained experienced truck driver and he's operated a successful business. He is not in need of educational or correctional treatment.

### MOHAMMED AL ASAI IS NOT GUILTY OF OBSTRUCTION

The commentary, Application note 2 states:

> **Limitation on Applicability of Adjustment-This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision. In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice.**

### AMOUNT OF LOSS

The United States has the burden of proof of loss. It proved at trial loss of less than $6,500.00. Al Yasmine Food Mart's clientele was overwhelmingly refugee and from an area near the Store without benefit of transportation. Testimony at trial demonstrated that the estimated gross income of the store was mischaracterized as a "small grocery". Testimony showed that it had a restaurant attached, that it was a bakery too and in addition, sold non-grocery items and services.

As a result, a store comparison method of determining loss will not be accurate. Al Yasmine Food Mart showed Schedule C income of 3,428,000.00 from 2013 through 2016. Its SNAP sales totaled 2,519,173.00.

10

The United States also cites the Second Circuit for the proposition that large transactions over "a certain" amount may be used to determine loss. There is no proof that this is so.

Finally, the United States cites the Seventh Circuit as comparing total transactions to estimated sales. This makes no sense given the fact that a person with no experience operating a grocery store or with SNAP estimates his future sales and this figure is used to determine loss amount.

The Government's "estimate" is just that, an "estimate" of loss. The proven loss is less than $6,500.00. Because the estimated loss adds 14 criminal history points and thus changes the guidelines from 4-10 months to 46-57 months, the Government must be required to prove "beyond a reasonable doubt" the loss which it has not done.

## REQUESTED SENTENCE

Because Mohammad Al Asai is a criminal history 0 and because of his service to the United States, a non-custodial sentence is sufficient but not greater than necessary to meet the requirements of the Sentencing Reform Act when considering the offense and the history and characteristics of Mohammed Al Asai.

Respectfully submitted,

s/ William M. Butler, Jr.
William M. Butler, Jr.
Counsel for Defendant Mohammed Al Asai
500 W. Jefferson Street, Suite 1520
Louisville, Kentucky 40202
(502) 582-2020 (Telephone)
(502) 583-8007 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2019 I filed the foregoing through the ECF System, which will send a notice of electronic filing to the Honorable Amanda Gregory, Assistant United States Attorney and to the Honorable Jessica R.C. Malloy, Assistant United States Attorney.

s/ William M. Butler, Jr.
WILLIAM M. BUTLER, JR.